IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| Leonard Charles, Jr. § | |
| § | |
| Plaintiff § | |
| § | |
| vs. § | Case No. 3:19-cv-95 |
| § | |
| Coburn Supply Company, Inc. § | |
| § | |
| Defendant § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

## I. Introduction

1.  Plaintiff Leonard Charles, Jr. ("Charles" or "Plaintiff") brings this lawsuit, filing this, his Original Complaint, against Coburn Supply Company, Inc. ("Coburn Supply" or "Defendant"), a Texas corporation. Mr. Charles worked for Coburn Supply at its locations in Galveston and Conroe, Texas, within this District. Mr. Charles was a Warehouse Manager when he was terminated by Coburn Supply for a medically verifiable illness/injury to his back and hips, caused by work for Coburn Supply. Mr. Charles had been transferred – against his will – from Coburn Supply's Galveston warehouse after he was first injured at work, to its Conroe warehouse, and was given more physically strenuous work. This transfer to Conroe and change in work duties – from being a manager who primary worked with his mind, to a warehouse worker in Conroe forced to do physical labor – was initiated by his employer in order to force him out. Mr. Charles worked one physically taxing day in Conroe before he was forced to take FMLA leave. Mr. Charles' physician then cleared him to return to work on March 8, 2017. However, Mr. Charles was terminated on February 24, 2017, while still out on medical leave.

1

2.  Both the Texas Workforce Commission and Equal Employment Opportunity Commission found that Mr. Charles was terminated for a medically verifiable illness, and that Coburn discriminated against Mr. Charles because of his disability when it terminated him without cause and without working with him to find accommodations for his disability.

3.  Plaintiff brings suit pursuant to 42 U.S.C. § 12112, et seq. the Americans with Disabilities Act (ADA).  Mr. Charles seeks money damages and attorneys' fees.

## II. Parties

4.  Each of the preceding paragraphs is incorporated herein by reference.

5.  Plaintiff Leonard Charles, Jr. is an individual residing at 16502 Brightling Lane, Houston, Harris County, Texas 77090.

6.  Defendant Coburn Supply is a Texas corporation with its headquarters at 350 Pine St., Ste 850, Beaumont, Jefferson County, Texas 77701.  Coburn may be served through its registered agent, Capitol Corporate Services, 206 E. 9th Street, Ste 1300, Austin, TX 78701.

## III.  Jurisdiction and Venue

7.  Each of the preceding paragraphs is incorporated herein by reference.

8.  Plaintiff brings suit pursuant to 42 U.S.C. § 12112, et seq. the Americans with Disabilities Act (ADA).  Therefore, there is federal question jurisdiction for which this District Court has original jurisdiction pursuant to U.S. Const. Art. 3, and 28 U.S.C. § 1331.

9.  The claims and causes of action arose and occurred in Galveston County, Texas, and Conroe, Texas because the Plaintiff worked primarily at Coburn Supply's Galveston, Texas location and was working in Galveston, Texas at the time he was injured.  Plaintiff was transferred to Coburn's Conroe, Texas location in order to force him to quit or become injured to the point

that he could not work and Coburn could fire him.  The District Courts of the Galveston Division or the Houston Division of the Southern District of Texas are the proper venue for cases with facts arising in Galveston County, and Montgomery County Texas, respectfully, pursuant to 28 U.S.C. §1391(b)(2).  Because Mr. Charles' primary employment location for Coburn was in Galveston County, and Conroe (Montgomery County) Texas was only the location where he was transferred so that Coburn could terminate Mr. Charles after working in Montgomery County for one day, the Galveston Division is the proper division to bring this lawsuit.

10. Mr.. Charles filed a complaint with the Equal Employment Opportunity Commission (EEOC) and received a "right to sue" letter on February 7, 2019, giving him 90 days to file suit. Mr. Charles has exhausted his administrative remedies and filed this lawsuit within the 90-day window.

### IV.  Facts

11. Each of the preceding paragraphs is incorporated herein by reference.

12. Leonard Charles, Jr. began working for Coburn Supply on August 6, 2009 as a Driver.  He was employed first at Coburn's Friendswood, Texas location, for approximately one year and was transferred to Coburn's Galveston, Texas warehouse where he was promoted to Warehouse Manager and spent the vast majority of his 8 1/2-years employment at Coburn Supply.  Mr. Charles managed $1.5 million in inventory at Coburn's Galveston, Texas warehouse.  He frequently worked overtime. Mr. Charles was never written up the entire time he worked at Coburn Supply.

13. Mr. Charles' job at Coburn's Galveston warehouse, as Warehouse Manager, was a mix of physical and mental work.  He managed the work of others in the warehouse and assisted in breaking down pallets of supplies, storing supplies in the warehouse, and pulling supplies to be shipped.

14. Over the course of Mr. Charles' eight and one-half years of work at Coburn Supply in Galveston, Texas, he developed a repetitive-use injury to his lower back and his hips. On or about August 9, 2016, Mr. Charles went out on FMLA for injuries to his back and hips. Mr. Charles returned to work at Coburn's Galveston warehouse on November 3, 2016, still under the care of his doctor, and still experiencing pain in his back and hips, which was progressing.

15. In early February 2017, Mr. Charles was transferred by Coburn Supply to its Conroe, Texas warehouse, to begin on February 6, 2017. Mr. Charles was told that he would continue to be employed as a Warehouse Manager in Conroe, continuing with the same rate of pay and position he had at Coburn's Galveston warehouse. Mr. Charles objected to the move to Conroe from Galveston but was told he did not have a choice.

16. When Mr. Charles arrived for his first day of work in Conroe on February 6, 2017, the Conroe Branch Manager, Mr. Blavat, instructed Mr. Charles that he was to unload a truck trailer, check in pallets and process product transfers; all of which were duties of a warehouse worker and not of a warehouse manager. When Mr. Charles asked Mr. Blavat if he (Mr. Charles) was going to still be a Warehouse Manager, Mr. Blavant informed Mr. Charles that he (Blavat) did not know if Mr. Charles would be a Warehouse Manager and would have to wait and see.

17. Coburn is a supply company for kitchen fixtures and appliances, bathroom fixtures and appliances, chemicals and cleaners, and lighting fixtures, among other products.[1] On February 6, 2017, Mr. Charles was experiencing serious pain which would have been apparent to anyone watching him work, including the Branch Manager, Mr. Blavant.

18. On February 7, 2017, due to the serious physical work he was made to perform by the Conroe Branch Manager, Mr. Charles went back to his doctor who again took him out of work on

---

[1] *See* https://www.coburns.com/KitchenBath

4

FMLA for the continuing damage to his back and his hips. Mr. Charles' doctor kept him out of work for one month, until March 8, 2017. Mr. Charles informed Coburn of his doctor's orders to be on FMLA for one month. Mr. Charles also informed Coburn that his doctor recommended a hip replacement due to the repetitive-stress injury incurred due to his work at Coburn.

19. Mr. Charles expected to return to work on March 8, 2017, when he would be released to work by his doctor, with minimal modifications to what should have been his work as a Warehouse Manager.

20. Instead, on February 23, 2017, Mr. Charles was called by Mr. Blavant and informed that if he did not return to work on February 24, 2017, with a note from his doctor releasing him to work, he would be "considered as having voluntarily terminated his employment" with Coburn Supply.

21. Mr. Charles did not return to work with a doctor's clearance on February 24, 2017 – because his doctor had kept him out of work until March 8, 2017 – and he was terminated by Coburn Supply.

22. Mr. Charles did not quit or resign his employment with Coburn Supply. He was terminated by Coburn Supply.

23. Coburn did not participate in the interactive process of determining whether Coburn could provide accommodations for Mr. Charles' disability – his back and hip injuries – so that he could continue in his job as Warehouse Manager. Instead, knowing that Mr. Charles had back and hip problems, Coburn transferred Mr. Charles to a new location and worked him all day to the point of injury, then fired him when he did not come back to work prior to his doctor's release, so that they would not have to pay for his hip surgery and/or back surgery.

24. When Mr. Charles was terminated, Coburn Supply cancelled his health insurance, meaning that he could not have the hip surgery that he required.

25.     Mr. Charles applied for unemployment benefits through the Texas Workforce Commission. Coburn contested Mr. Charles' right to unemployment benefits. The TWC determined that Coburn fired Mr. Charles "because of [his] medically verifiable illness."

26.     Mr. Charles filed his EEOC complaint. The EEOC found that "the evidence suggests that [Coburn Supply] failed to participate in the interactive process with [Mr. Charles]. [Coburn Supply] violated the ADAAA when [Mr. Charles] was informed he must return to work by February 24, 2017, with a full release from his doctor." The EEOC further determined that "there is reasonable cause to believe…that [Coburn Supply] failed to engage in the interactive process and therefore denied [Mr. Charles] reasonable accommodation and discharged [Mr. Charles] based on a disability in violation of the ADAAA. Further there is reasonable cause to believe [Coburn Supply's] policy or practice of failing to engage in the interactive process and denying reasonable accommodations to individuals with disabilities violates the ADAAA."

27.     Mr. Charles diligently sought comparable employment, after he was cleared by his doctor for work. Due to his age and being fired for disability, he has found it impossible to find a comparable job to the one he was fired from. Mr. Charles started his own business and has worked to replace his income. He has replaced some, but not nearly all, of his income and benefits that he had at Coburn Supply.

**V. Causes of Action – Title VII Employment Discrimination Based on Disability**

28.     Each of the preceding paragraphs is incorporated herein by reference.

29.     Under the Americans with Disabilities Act ("ADA"), a covered employer must provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. §

12112(b)(5)(A). The ADA also makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees [and] other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on a claim under the ADA, the plaintiff must first establish a *prima facie* case by showing that (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *EEOC v. LHC Grp.*, 773 F.3d 688, 697 (5th Cir. 2014).

30.     "An individual has a disability under the [ADA] if he or she (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment, or (3) is regarded as having such impairment." *Atkins v. Salazar*, 677 F.3d 667, 675, 455 Fed. Appx. 385 (5th Cir. 2011) (*per curiam*).  Mr. Charles' disability was due to injury to his back and hips which he sustained during his twelve years of employment for Coburn Supply in Galveston, Texas.  His back and hip injuries substantially limited his major life activities, including lifting, moving, and carrying. He had a record of such impairment when his doctor took Mr. Charles out of work for one month, starting on February 7, 2017.   Further, he was regarded by Coburn Supply as having such a disability when Coburn fired Mr. Charles for not being able to do what it considered his job at the Conroe warehouse.

31.     Mr. Charles was qualified for his job as a Warehouse Manager.  He had held that job for eight and one-half years prior to his termination.   An employee is a "qualified individual" under the ADA if she, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Salem v. Hous. Methodist Hosp.*, No. 4:14-1802, 2015 U.S. Dist. LEXIS 147319, at *15 (S.D. Tex. 2015); citing 42 U.S.C. § 12111(8). A plaintiff must therefore either explain how she did not require any change in her

employment conditions or point to a reasonable modification of the conditions of her employment that would enable her to fulfill the requirements of her job. *Id.* Mr. Charles had been cleared to return to his job as Warehouse Manager on March 8, 2017. Further, Mr. Charles was not injured, and did not become disabled, doing job tasks for a Warehouse Manager, which was his job. He was reinjured, and became disabled, because Coburn's Conroe Branch Manager, purposely had Mr. Charles do the heavy labor of a warehouse laborer directly after returning from prior FMLA for back problems. The work that the Coburn Conroe Branch Manager had Mr. Charles do was unrelenting physical labor, designed to injure Mr. Charles further. Mr. Charles was capable of doing his work as a Warehouse Manager, which involves mostly mental labor with some minor physical labor. In the alternative, Coburn Supply could have accommodated Mr. Charles by having the warehouse workers who were already employed by Coburn Supply do the physical part of the labor in the warehouse, leaving Mr. Charles to do the management/mental side of the work that he was qualified to do and had done for many years.

32.    Alternatively, to the extent that Coburn Supply claims that Mr. Charles was fired because he had used up his unpaid leave and FMLA and couldn't return to work prior to the end of his FMLA leave, Coburn Supply could have accommodated Mr. Charles by allowing him to be on unpaid leave until March 8, 2017, as recommended by Mr. Charles' doctor, as told to Coburn Supply. The Southern District of Texas has noted that "[t]here may be circumstances in the Fifth Circuit under which granting an employee additional leave from work would be a reasonable accommodation. *Salem v. Hous. Methodist Hosp.*, No. 4:14-1802, 2015 U.S. Dist. LEXIS 147319, at *17 (S.D. Tex. 2015); citing *Silva v. City of Hidalgo*, 575 F. App'x 419, 423 (5th Cir. 2014) (*per curiam*) (noting that an employer's "unbudging framework" of terminating employees if they were

8

unable to return to work following expiration of FMLA leave could "violate" the employer's ADA duties). Mr. Charles' FMLA leave was not indefinite. It was set to end on March 8, 2017.

33. An employer has a duty to engage in an interactive process with an employee to determine a reasonable accommodation. *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996) ("[T]he employee's initial request for an accommodation . . . triggers the employer's obligation to participate in the interactive process of determining one."). "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Cutrera*, 429 F.3d at 112 (citing *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)). "An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended." *Cutrera*, 429 F.3d at 113; *see also Jenkins v. Cleco Power LLC*, 487 F.3d 309, 316 (5th Cir. 2007) (collecting cases).

34. Coburn Supply completely failed to engage in the interactive process. Mr. Charles requested one month off work to heal, per his doctor's instructions. He was fired prior to that month being up and returning to work, with no discussion at all by Coburn about accommodating the disability due to injuries to his back and hips which would have required minimal accommodation at best – Mr. Charles would have merely been required to do his actual job – Warehouse Manager – and not the job of a warehouse laborer.

35. Mr. Charles' employment was terminated by Coburn Supply. This is an adverse employment action. While Coburn Supply has argued to the TWC and EEOC that Mr. Charles "resigned" by not returning to work prior to his being released by a doctor, Mr. Charles

unequivocally did not resign and both the TWC and EEOC found that Mr. Charles was terminated without cause.

## VII.  Damages

36.  Each of the preceding paragraphs is incorporated herein by reference.

37.  Mr. Charles seeks damages for the following:

    (1)    loss of wages;
    (2)    loss of benefits;
    (3)    liquidated damages;
    (4)    compensatory damages including loss of enjoyment of life and mental anguish;
    (5)    punitive or exemplary damages;
    (6)    attorneys' fees and costs of bringing suit; and
    (7)    pre and post judgment interest.

Mr. Charles seeks such further relief to which he is entitled.

## VIII.  Jury Demand

38.  Mr. Charles demands a jury trial and will pay the jury fee for same.

### Conclusion and Prayer

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant be cited to appear and answer the allegations contained in this Complaint, and upon final hearing, Plaintiff recover judgment of and from the Defendant for his compensatory, liquidated and/or exemplary damages as described above, and that he recover costs, pre-judgment and post-judgment interest at the legal rate, that he recover his attorneys' fees, and have such other and further relief, both general and special, at law and at equity to which Plaintiff may show himself justly entitled under all of the attending facts and circumstances.

Respectfully submitted,

**SCHREIBER | KNOCKAERT, PLLC**

*/s/ Joseph M. Schreiber*
_____
Joseph M. Schreiber
Texas Bar No.: 24037449
S.D. Tex. No.: 36101
Erik A. Knockaert
Texas Bar No. 24036921
S.D. Tex. No. 36255
701 North Post Oak Rd., Suite 325
Houston, TX 77024
Phone (281) 949-8904
Fax (281) 949-8914
joe@lawdoneright.net
erik@lawdoneright.net

**THE LAW OFFICE OF JANET HANSEN**

Janet Hansen
Texas Bar No.01933600
S.D. Tex. No. 3501
Two Greenway Plaza, Suite 600
Houston, Texas  77046
Phone (713) 255-3600
Fax (713) 255-3602
jhansen@janethansenlaw.com

**ATTORNEYS FOR PLAINTIFF**

11